UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

SHAUN M.,

                Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

                Defendant.

Case No. 2:18-CV-01340-TLF

ORDER REVERSING AND REMANDING FOR ADDITIONAL PROCEEDINGS

Plaintiff has brought this matter for judicial review of defendant's denial of his applications for disability insurance and supplemental security income benefits.

The parties have consented to have this matter heard by the undersigned Magistrate Judge. For the reasons set forth below, the Court reverses Defendant's decision to deny benefits and remands for additional proceedings.

## I.     ISSUES FOR REVEW

1. Did the ALJ err in evaluating Plaintiff's symptom testimony?
2. Did the ALJ properly evaluate the medical opinion evidence?
3. Did the ALJ err in discounting lay witness evidence?

## II.     BACKGROUND

On June 10, 2011, Plaintiff filed applications for disability insurance and supplemental security income benefits, alleging a disability onset date of July 1, 2010. AR 15, 84. Plaintiff's applications were denied upon initial administrative review and on reconsideration. *Id.* A hearing was held before Administrative Law Judge ("ALJ") Kimberly Boyce on July 18, 2012. *Id.* In a

ORDER REVERSING AND REMANDING FOR
ADDITIONAL PROCEEDINGS - 1

1 | decision dated September 24, 2012, the ALJ found that Plaintiff was not disabled. AR 81-101.

2 | The Social Security Appeals Council denied Plaintiff's request for review on December 17,

3 | 2013. AR 102-05. On December 15, 2014, this Court issued an order affirming the

4 | Commissioner's decision. AR 106-23.

5 | Plaintiff did not file further appeals, and instead initiated new applications for disability

6 | insurance benefits and supplementary security income on February 20, 2015. AR 15-16, 256-64,

7 | 267-73. Plaintiff alleged a disability onset date of February 1, 2012, but the earliest date he could

8 | be found disabled was September 25, 2012, the date the first ALJ decision became

9 | administratively final. AR 15-16.

10 | Plaintiff's second round of applications were denied upon initial administrative review

11 | and on reconsideration. AR 16, 196-99, 204-06, 207-09. A hearing was held before ALJ Larry

12 | Kennedy on April 20, 2017. AR 40-80. In a decision dated September 18, 2017, ALJ Kennedy

13 | found that Plaintiff was not disabled. AR 12-30. The Social Security Appeals Council denied

14 | Plaintiff's request for review on July 6, 2018. AR 1-6.

15 | On December 19, 2018, Plaintiff filed a complaint in this Court seeking judicial review of

16 | the ALJ's written decision. Dkt. 4. Plaintiff asks this Court to reverse the ALJ's decision and to

17 | remand this case for an award of benefits or additional proceedings. Dkt. 12, p. 18.

### III. STANDARD OF REVIEW

The Court will uphold an ALJ's decision unless: (1) the decision is based on legal error; or (2) the decision is not supported by substantial evidence. *Revels v. Berryhill,* 874 F.3d 648, 654 (9th Cir. 2017). Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek v. Berryhill,* 139 S.Ct. 1148, 1154 (2019). This requires "more than a mere scintilla" of evidence. *Id.*

The Court must consider the administrative record as a whole. *Garrison v. Colvin,* 759 F.3d 995, 1009 (9th Cir. 2014). The Court is required to weigh both the evidence that supports, and evidence that does not support, the ALJ's conclusion. *Id.* The Court may not affirm the decision of the ALJ for a reason upon which the ALJ did not rely. *Id.* Only the reasons identified by the ALJ are considered in the scope of the Court's review. *Id.*

## IV.   DISCUSSION

The Commissioner uses a five-step sequential evaluation process to determine if a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920. The ALJ assesses the claimant's residual functional capacity ("RFC") to determine, at step four, whether the Plaintiff can perform past relevant work, and if necessary, at step five to determine whether the Plaintiff can adjust to other work. *Kennedy v. Colvin*, 738 F.3d 1172, 1175 (9th Cir. 2013). The ALJ has the burden of proof at step five to show that a significant number of jobs that the claimant can perform exist in the national economy. *Tackett v. Apfel*, 180 F.3d 1094, 1099 (9th Cir. 1999); 20 C.F.R. §§ 404.1520(e), 416.920(e).

In this case, the ALJ found that Plaintiff had the following severe, medically determinable impairments: degenerative disc disease of the lumbar spine; bilateral knee impairment; diabetes mellitus; obesity; affective disorder (major depressive disorder, depression, bipolar, mood disorder); and anxiety related disorder (anxiety, panic, post-traumatic stress disorder, agoraphobia). AR 18. The ALJ also found that Plaintiff had a range of non-severe and non-medically determinable impairments. AR 18-19.

Based on the limitations stemming from these impairments, the ALJ assessed Plaintiff as being able to perform a reduced range of sedentary work. AR 21. Relying on vocational expert ("VE") testimony, the ALJ found that Plaintiff could not perform his past work, but determined

1  that there were other sedentary, unskilled jobs Plaintiff could perform; therefore the ALJ

2  determined at step 5 that Plaintiff was not disabled. AR 28-30.

      A.  <u>Whether the ALJ erred in evaluating Plaintiff's symptom testimony</u>

Plaintiff maintains that the ALJ erred in evaluating his subjective allegations. Dkt. 12, pp. 13-18. In his testimony about his mental health symptoms, Plaintiff alleged that he would not be able to get to work every day. AR 58. Plaintiff asserted that his bipolar depression makes him afraid to leave home and results in a lack of energy. AR 59-60. Plaintiff indicated that he would "just for the most part curl up in a ball" and not leave his bed because he was afraid. AR 60.

In weighing a Plaintiff's testimony, an ALJ must use a two-step process. *Trevizo v. Berryhill*, 871 F.3d 664, 678 (9th Cir. 2017). First, the ALJ must determine whether there is objective medical evidence of an underlying impairment that could reasonably be expected to produce some degree of the alleged symptoms. *Ghanim v. Colvin,* 763 F.3d 1154, 1163 (9th Cir. 2014). If the first step is satisfied, and provided there is no evidence of malingering, the second step allows the ALJ to reject the claimant's testimony of the severity of symptoms if the ALJ can provide specific findings and clear and convincing reasons for rejecting the claimant's testimony. *Id.*

In discounting Plaintiff's testimony, the ALJ cited the inconsistency of Plaintiff's allegations with physical and mental status examinations. AR 22-23. Inconsistency with objective evidence may serve as a clear and convincing reason for discounting Plaintiff's testimony. *Regennitter v. Commissioner of Social Sec. Admin.*, 166 F.3d 1294, 1297 (9th Cir. 1998). But an ALJ may not reject a claimant's subjective symptom testimony "*solely* because the degree of pain alleged is not supported by objective medical evidence." *Orteza v. Shalala*, 50 F.3d 748, 749-50 (9th Cir. 1995) (internal quotation marks omitted, and emphasis added); *Byrnes*

*v. Shalala*, 60 F.3d 639, 641-42 (9th Cir. 1995) (applying rule to subjective complaints other than pain).

The ALJ has cited an additional reason for discounting Plaintiff's testimony, namely the inconsistency of Plaintiff's allegations with some of his physical and social activities. AR 23-24. An ALJ may discredit a claimant's testimony when the claimant reports participation in everyday activities indicating capacities that are transferable to a work setting. *See Morgan v. Comm'r Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir.1999).

However, disability claimants should not be penalized for attempting to lead normal lives in the face of their limitations. *See Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir.2001) ("This court has repeatedly asserted that the mere fact that a plaintiff has carried on certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in any way detract from her credibility as to her overall disability. One does not need to be 'utterly incapacitated' in order to be disabled."), citing *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir.1989).

In assessing Plaintiff's allegations concerning his impairments, the ALJ cited Plaintiff's hearing testimony:

> According to the claimant, it is difficult for him to keep a schedule and/or be around others. The claimant testified that on some days it is difficult for him to get up and do simple things such as personal care and/or taking out the trash. He also related that he is unable to get up and out of his apartment for a full time job. As the claimant related, he tends to argue with rather than connect with others in person. On bad days, the claimant says that he spends all day in bed, occasionally with suicidal thoughts. Physically, the claimant testified that is (sic) unable to sit for long because it hurts his knees. The claimant also indicated that he has minimal sensation in his right leg.

AR 22, 52-55, 58, 60.

The ALJ also cited Plaintiff's function report, in which Plaintiff indicated that his mental health symptoms kept him inside for days at a time, and occasionally for weeks or longer. AR

22, 297. The ALJ also cited Plaintiff's statement that when he can go outside, he needs to listen to music constantly because he is scared and confused by people. AR 22, 301. The ALJ also noted Plaintiff's statement that he could walk half a small block with a cane due to chronic pain in his back and knees. AR 22, 302, 304.

In rejecting Plaintiff's allegations concerning his ability to be around others, the ALJ cited Plaintiff's June 2013 statement that he planned to be part of a parade float, and his report that he attended a different parade with friends in July 2013 despite his tendency to feel panic in crowds. AR 23-24, 534, 578. The ALJ reasoned that attending a parade, and being part of a parade float, necessitated being around many strangers in a crowded, loud, and unfamiliar environment and was inconsistent with Plaintiff's allegations regarding social anxiety. AR 23-24.

Plaintiff argues that while he planned to participate in a parade float, there is no evidence that he did so, and notes that when he attended a parade with friends in July 2013, the treatment record indicates that Plaintiff did so with friends who were "decidedly supportive" about his tendency to feel panic in crowd stimuli. Dkt. 12, pp. 16-17; AR 578.

The ALJ's finding that Plaintiff attended a parade with a group of friends, and planned to participate in a parade float, was not a clear and convincing reason to reject Plaintiff's symptom testimony as to his mental health conditions. The ALJ also cited Plaintiff's work on a short-lived podcast, utilization of Facebook, and brief participation as a booth attendant at a comic book convention as evidence that his mental impairments were not as severe as alleged. AR 24, 51-53. Citation to these isolated examples of Plaintiff's engagement with the outside world was not a clear and convincing reason to discount Plaintiff's testimony regarding his mental health impairments.

The ALJ has provided a clear and convincing reason for rejecting Plaintiff's allegations about the severity of his physical symptoms. The ALJ found that Plaintiff's physical impairments improved with treatment during the period at issue. AR 23-24. The effectiveness of medication and treatment are relevant to the evaluation of a claimant's alleged symptoms. 20 C.F.R. §§ 404.1529(c)(3)(iv), 416.929(c)(3)(iv). Evidence of medical treatment successfully relieving symptoms can undermine a claim of disability. *Wellington v. Berryhill*, 878 F.3d 867, 876 (9th Cir. 2017); *see also Tommasetti v. Astrue*, 533 F.3d 1035, 1040 (9th Cir. 2008) (citing *Parra v. Astrue*, 481 F.3d 742, 750–51 (9th Cir.2007) (stating that "evidence of 'conservative treatment' is sufficient to discount a claimant's testimony regarding severity of an impairment").

Here, the ALJ noted that Plaintiff's physical condition had improved noticeably with diet and exercise. AR 24. This finding is consistent with the evidence regarding Plaintiff's physical impairments. AR 604, 869, 944, 956, 963, 969.

As discussed below, the ALJ erred by discounting evidence from Plaintiff's treating physician and therapists concerning his mental health conditions. *See infra* Sections B and C. These mental health conditions had symptoms that fluctuated and treatment helped at times, but the record shows the Plaintiff's symptoms would wax and wane, and so this was not a clear and convincing reason for rejecting Plaintiff's allegations about the severity of his mental health conditions.

B.  <u>Whether the ALJ erred in evaluating the medical opinion evidence</u>

Plaintiff alleges that the ALJ erred in evaluating the opinions of treating or examining physicians Patrick Gemperline, M.D., Supriya Kang, M.D., James Czysz, Psy.D., and Melanie Mitchell, Psy.D. Dkt. 12, pp. 2-11. Plaintiff also asserts that information in the reports and notes

of non-accepted medical sources -- Cathleen Bozek, ARNP, Robert Curtis, M.A., and Corey Thies -- should have been given more weight by the ALJ.

In assessing an acceptable medical source – such as a medical doctor – the ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of either a treating or examining physician. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995) (citing *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir. 1990)); *Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988)). When a treating or examining physician's opinion is contradicted, the opinion can be rejected "for specific and legitimate reasons that are supported by substantial evidence in the record." *Lester*, 81 F.3d at 830-31 (citing *Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995); *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983)).

Claimants who suffer from mental conditions may have symptoms that wax and wane, with downward cycles, cycles of improvement, mixed results from treatment, and such claimants are often unpredictable patients -- their ability to comply with recommended medication and other supports may be spotty. *Garrison v. Colvin,* 759 F.3d 995, 1009 (9th Cir. 2014). Especially when a claimant suffers from bipolar disorder, the symptoms are cyclical, and short-lived improvements would not, by themselves, constitute substantial evidence for purposes of over-riding a treating physician's opinion that the plaintiff is significantly impaired. *Buck v. Colvin,* 540 Fed. Appx. 772, 773 (9th Cir. 2013).

### 1. Dr. Gemperline

Dr. Gemperline, Plaintiff's treating physician, has offered several opinions concerning Plaintiff's functional limitations. Plaintiff challenges the ALJ's evaluation of Dr. Gemperline's June 2015 and April 2017 opinions. Dkt. 12, p. 3-6.

On August 11, 2014, Dr. Gemperline completed a housing form for Plaintiff, in which he opined that Plaintiff would require a first floor apartment or an apartment near an elevator because he was unable to walk upstairs due to a slipped disc. AR 390-93.

On February 5, 2015, Dr. Gemperline completed a physical functional evaluation for the Washington Department of Social and Health Services ("DSHS"). AR 488-92. Dr. Gemperline restricted Plaintiff to performing light work. AR 490. Dr. Gemperline stated in a report on June 1, 2015 that Plaintiff had ongoing lower back pain with prolonged walking, standing, and lifting more than five pounds or carrying more than ten pounds. AR 605. Dr. Gemperline suspected Plaintiff was disabled based on "a combination of pain associated with back injury compounded by mental health disability having impaired the usual recovery curve." *Id.*

Dr. Gemperline again completed an assessment of Plaintiff's ability to perform physical work activities on April 17, 2017. AR 975-78. Dr. Gemperline opined that Plaintiff could perform sedentary work, defined as lifting up to ten pounds and occasionally carrying light items. AR 975. Dr. Gemperline opined that Plaintiff could stand and walk less than two hours in an eight-hour workday and would need to periodically alternate sitting and standing. AR 976. Dr. Gemperline added that Plaintiff would also have a range of other manipulative, postural, and environmental restrictions. AR 976-77. Dr. Gemperline concluded that Plaintiff "has appeared to have limited coping skills which may be from his medication, psychiatric illness or current cognitive status.… I am unable to imagine [Plaintiff] working and sustaining full time employment." AR 978.

The ALJ assigned "slight weight" to Dr. Gemperline's June 2015 opinion, reasoning that Dr. Gemperline: (1) was offering an opinion on the functional impact of Plaintiff's mental health impairments without having treating Plaintiff for these conditions, (2) had not reviewed

1  Plaintiff's mental health treatment records, (3) noted few, if any, mental status findings to
2  support his opinion, and those cited were generally normal, (4) advised Plaintiff to become more
3  active by exercising, and (5) offered an opinion that appeared to conflict with Plaintiff's
4  statements from February 2015 regarding his mental health. AR 26.

With respect to the ALJ's first three reasons, a physician does not have to be a specialist in mental health to provide a medical opinion regarding mental health limitations, although the medical opinion of a specialist about medical issues related to his or her area of specialty will generally be given more weight. *See Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987); *see also* 20 C.F.R. § 404.1527(c)(5). The Ninth Circuit has indicated that "it is well established that primary care physicians (those in family or general practice) 'identify and treat the majority of Americans' psychiatric disorders.'" *Sprague*, 812 F.2d at 1232 (citations omitted).

Even though Dr. Gemperline did not perform a detailed review of Plaintiff's mental health treatment history or specifically treat Plaintiff for his mental health conditions, it is legally permissible for a general practitioner to offer an opinion about the functional impact of Plaintiff's mental health impairments.

Yet, a fair reading of each opinion in which he makes a statement about the impact of Plaintiff's mental impairments shows Dr. Gemperline explained his assessment by noting an uncertainty about the precise effect of Plaintiff's mental impairments on his overall functional capacity (mental and physical). For example, his February 5, 2015 opinion listed bipolar disorder among Plaintiff's impairments, but stated that he was uncertain about the impact of this condition of Plaintiff's ability to perform work activities and noted that Plaintiff required a psychological evaluation. AR 489. And his June 1, 2015 opinion stated that "I *suspect* disability" based on "a combination of pain associated with back injury compounded by mental health

disability having impaired the usual recovery curve." AR 605 (emphasis added). In his April 17, 2017 opinion, he observed that Plaintiff "*appeared* to have limited coping skills which *may be* from his medication, psychiatric illness or current cognitive status." AR 978 (emphasis added).

While it is legally permissible for Dr. Gemperline to offer an opinion about the limitations caused by Plaintiff's mental health impairments, his statements are not clear and indicate that referral to a mental health specialist would be necessary to obtain a more precise evaluation of the functional impact of these impairments. As such, the ALJ did not err in discounting Dr. Gemperline's opinion regarding Plaintiff's mental health impairments.

Because the ALJ has provided a specific, legitimate reason for discounting Dr. Gemperline's statements, the ALJ did not err in evaluating this opinion. *See Presley-Carrillo v. Berryhill*, 692 Fed. Appx. 941, 944-45 (9th Cir. 2017) (citing *Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008)) (although an ALJ erred on one reason he gave to discount a medical opinion, "this error was harmless because the ALJ gave a reason supported by the record" to discount the opinion).

The ALJ assigned "little weight" to Dr. Gemperline's April 2017 opinion. AR 25. The ALJ assigned "no weight" to Dr. Gemperline's opinion that Plaintiff could never balance, stoop, crouch, kneel, or crawl, arguing that this assessment conflicted with Dr. Gemperline's February 2015 opinion, in which he stated that Plaintiff would have "moderate" limitations in stooping and crouching. *Id.* The ALJ reasoned that the medical record between 2015 and 2017 did not reveal a worsening in Plaintiff's physical condition that would account for additional postural limitations. *Id.* The ALJ added that Dr. Gemperline's statement that he was "unable to imagine" that Plaintiff could sustain full-time employment conflicted with his earlier opinion that Plaintiff could perform light work. *Id.* The ALJ assigned no weight to the manipulative limitations

ORDER REVERSING AND REMANDING FOR
ADDITIONAL PROCEEDINGS - 11

contained in Dr. Gemperline's opinion, arguing that the record did not contain a medically determinable impairment that would cause such limitations and noting that Plaintiff was able to use a computer keyboard daily. *Id.*

Plaintiff argues that the ALJ erred by not providing specific information to support his conclusion that Plaintiff's physical condition did not change between 2015 and 2017 and asserts that this conclusion is not supported by the medical record. Dkt. 12, p. 4. The ALJ reviewed the medical record regarding Plaintiff's physical impairments, and his conclusion that there was no change in Plaintiff's medical condition that would warrant additional postural limitations is supported by substantial evidence. AR 22-23, 423-24, 690, 698, 708, 723, 759, 774, 783, 945, 956, 960.

Plaintiff alleges that the ALJ's conclusion is not supported by the medical record but does not offer any evidence to support this argument.

Even if there were a conflict between Plaintiff's interpretation of the record and the ALJ's, where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld. *See Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (citing *Morgan v. Comm'r of Soc. Sec. Admin.,* 169 F.3d 595, 601 (9th Cir. 1999))).

As for Plaintiff's manipulative limitations, under Social Security regulations, a claimant's symptoms will not be found to affect the ability to perform basic work activities unless medical signs or laboratory findings demonstrate the presence of a medically determinable impairment. 20 C.F.R. §§ 404.1529, 416.929. Medical signs and laboratory findings, established by medically acceptable clinical or laboratory diagnostic techniques, must show the existence of a medical impairment which results from anatomical, physiological, or psychological abnormalities and

which could reasonably be expected to produce the pain or other symptoms alleged. *Id.* Given the absence of a medically determinable impairment that could cause manipulative limitations, the ALJ did not err in discounting this part of Dr. Gemperline's opinion.

### 2. Dr. Kang

On April 18, 2017, Plaintiff's treating psychiatrist Dr. Kang completed a letter stating that she evaluated his need for managing medications on four occasions starting in December 2016. AR 979. Dr. Kang stated that Plaintiff had been a patient in the clinic since 1995 and was diagnosed with "Mood Disorder r/o Bipolar, PTSD, and Social Anxiety Disorder".

Dr. Kang observed: "[b]ecause this patient is relatively new to me, it is difficult to attempt to formulate a prognosis at this time." *Id.* Dr. Kang described Plaintiff's symptoms -- "mood and personality disturbance, chronic suicidal ideation, social anxiety, intrusive recollections of traumatic past experiences, and persistent irrational fears moderately to severely affecting interpersonal interactions." Dr. Kang opined that the "symptoms and signs negatively impact social relationships, as well as concentration and persistence in tasks" and therefore, "ongoing mental health treatment and compliance with both psychotherapy and medication management would be medically recommended". In conclusion, Dr. Kang opined that, "[a]t this time and indefinitely, based on psychiatric symptoms and history, full time employment would not be possible." *Id.*

The ALJ assigned "slight weight" to Dr. Kang's opinion, reasoning that her opinion that Plaintiff was "indefinitely" disabled was qualified by her statements that Plaintiff was "relatively new to me" that it was "difficult to attempt to formulate a prognosis at this time." AR 27. The ALJ characterized Dr. Kang's opinion as an "educated guess" and noted that Plaintiff was consistently normal during mental status examinations. *Id.*

The ALJ has not provided a specific and legitimate reason for discounting Dr. Kang's opinion. While Dr. Kang qualified her statement to some extent, the only uncertainty she expressed was about the prognosis for Plaintiff's future psychiatric health status. Accordingly, the ALJ erred by discounting Dr. Kang's opinion as being uncertain about the functional impact of Plaintiff's past and present mental health impairments, as well as her opinion that "symptoms and signs negatively impact social relationships, as well as concentration and persistence in tasks" – which was a work-related limitation.

### 3. Dr. Czysz and Dr. Mitchell

Dr. Czysz evaluated Plaintiff for DSHS on October 22, 2013. AR 365-71. Dr. Czysz's evaluation consisted of a clinical interview, a mental status examination, and a patient self-inventory. Based on this evaluation, Dr. Czysz assessed Plaintiff as having a range of moderate and marked mental limitations. AR 367.

Dr. Mitchell evaluated Plaintiff for DSHS on January 21, 2015. AR 398-411. Dr. Mitchell's evaluation consisted of a clinical interview, a mental status examination, trail making exercises, and a patient self-inventory. Based on this evaluation, Dr. Mitchell assessed Plaintiff as having a range of moderate, marked, and severe mental limitations. AR 400-401.

Dr. Mitchell evaluated Plaintiff again on December 6, 2016. AR 621-32. Dr. Mitchell's evaluation consisted of a clinical interview, a mental status examination, and a personal assessment inventory. Based on this evaluation, Dr. Mitchell again assessed Plaintiff as having a range of moderate, marked, and severe mental limitations. AR 623-24.

The ALJ assigned "slight weight" to the opinions of Dr. Czysz and Dr. Mitchell, reasoning that they: (1) were unable to review the longitudinal record, (2) necessarily relied heavily on their own limited findings and Plaintiff's subjective allegations, which are not

ORDER REVERSING AND REMANDING FOR
ADDITIONAL PROCEEDINGS - 14

supported by the record, and (3) did not provide a narrative statement or citations to persuasive evidence to support his opinion that Plaintiff would have marked mental limitations. AR 26-27.

With respect to the first reason, the ALJ cited Dr. Czysz's notation that there were no prior records available for review. AR 26, 365. The ALJ also noted that Dr. Mitchell only examined Dr. Czysz's report, and the results of her own prior examination. AR 26, 398, 621.

Social Security regulations provide that "the extent to which a medical source is familiar with the other information in your case record" is a relevant factor that the agency will consider in deciding the weight to give to a medical opinion. 20 C.F.R. §§ 404.1527(c)(6), 416.927(c)(6). As such, the ALJ has provided a specific, legitimate reason for discounting the opinions of Dr. Czysz and Dr. Mitchell.

Regarding the ALJ's second reason, an ALJ may reject a physician's opinion "if it is based 'to a large extent' on a claimant's self-reports that have been properly discounted as incredible." *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008) (quoting *Morgan v. Comm'r. Soc. Sec. Admin.*, 169 F.3d 595, 602 (9th Cir. 1999)). "[W]hen an opinion is not more heavily based on a patient's self-reports than on clinical observations, there is no evidentiary basis for rejecting the opinion." *Ghanim v. Colvin*, 763 F.3d 1154, 1162 (9th Cir. 2014) (citing *Ryan*, 528 F.3d at 1199-1200).

The ALJ also cited several instances in which Dr. Czysz and Dr. Mitchell appeared to rely on Plaintiff's subjective allegations. AR 26-27. However, the evaluations of Dr. Czysz and Dr. Mitchell consisted of objective measures such as a clinical interview and a mental status examination, and the Court cannot say that they relied more heavily on Plaintiff's self-reports than on professional tests and objective assessments. *See Buck v. Berryhill*, 869 F.3d 1040, 1049

(9th Cir. 2017) (a psychiatrist's clinical interview and MSE are "objective measures" which "cannot be discounted as a self-report.").

### C. Whether the ALJ erred in evaluating information in statements and notes from non-acceptable medical sources

Plaintiff maintains that the ALJ improperly evaluated statements from several lay witnesses, including Cathleen Bozek, ARNP, Robert Curtis, M.A., and Corey Thies. Dkt. 12, pp. 6, 11-13.

When evaluating opinions from non-acceptable medical sources an ALJ may expressly disregard such lay testimony if the ALJ provides "reasons germane to each witness for doing so." *Turner v. Commissioner of Social Sec.*, 613 F.3d 1217, 1224 (9th Cir. 2010) (citing *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001); 20 C.F.R. §§ 404.1502, 416.902.

#### 1. Ms. Bozek

The ALJ assigned "no weight" to Ms. Bozek's December 2014 statement that Plaintiff was "disabled-unable to work." AR 28, 508. The ALJ reasoned that this statement was not supported by the medical record or by citations to persuasive evidence. AR 28. An inconsistency between the medical evidence and the opinion of a non-acceptable medical source can constitute a germane reason for discounting that opinion. *See e.g. Bayliss v. Barnhart,* 427 F.3d, 1211, 1217 (9th Cir. 2005), *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001) (conflict between lay witness testimony and the medical evidence is a germane reason for rejecting such testimony). Further, Social Security regulations "give more weight to opinions that are explained than to those that are not." *Holohan v. Massanari*, 246 F.3d 1195, 1201-02 (9th Cir. 2001). Accordingly, the ALJ has given germane reasons for discounting Ms. Bozek's opinion.

#### 2. Mr. Curtis

1    The ALJ assigned "limited weight" to the opinion of Mr. Curtis, reasoning that he relied on Plaintiff's unreliable subjective allegations. AR 26. Nevertheless, the ALJ cited Mr. Curtis' opinion that Plaintiff's mental impairments would impair his ability to attend work regularly and/or tolerate the interpersonal contacts of the workplace. *Id.*

The ALJ accounted for Mr. Curtis' opinion regarding Plaintiff's mental limitations by restricting him to performing work in a predictable environment which requires little or no judgment, minimal supervisor contact, no more than superficial interactions with co-workers, and no public contact. AR 21, 26. Yet, the ALJ did not incorporate into the RFC Mr. Curtis' opinion that Plaintiff's social phobia and post-traumatic stress symptoms would impair his ability to attend work regularly. AR 324, 502-08.

### 3. Mr. Thies

The ALJ assigned "slight weight" to the April 6, 2017 opinion of mental health therapist Corey Thies, who opined that "it was reasonable to estimate" that Plaintiff's cumulative psychological stress would result in frequent absences from work as well as difficulty with productivity while at work. AR 886. Mr. Thies also opined that Plaintiff's mental health symptoms would interfere with Plaintiff's ability to sustain regular work attendance. *Id.*

The ALJ reasoned that Mr. Thies' opinion was based on Plaintiff's self-reports, noting instances in Mr. Thies' letter in which Mr. Thies repeatedly uses language such as "report[ed]," "state[ed]," and "expressed" when describing Plaintiff's allegations. AR 27.

An ALJ may reject an opinion "if it is based 'to a large extent' on a claimant's self-reports that have been properly discounted as incredible." *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008) (quoting *Morgan v. Comm'r. Soc. Sec. Admin.*, 169 F.3d 595, 602 (9th Cir. 1999)). This situation is distinguishable from one in which the doctor provides her own

observations in support of her assessments and opinions. *See Ryan v. Comm'r of Soc. Sec. Admin.*, 528 F.3d 1194, 1199-1200 (9th Cir. 2008). "[W]hen an opinion is not more heavily based on a patient's self-reports than on clinical observations, there is no evidentiary basis for rejecting the opinion." *Ghanim v. Colvin*, 763 F.3d 1154, 1162 (9th Cir. 2014) (citing *Ryan*, 528 F.3d at 1199-1200).

For the reasons discussed above, the ALJ has not properly discounted Plaintiff's subjective allegations. *See supra* Section A. Mr. Thies was Plaintiff's therapist for one year when he issued his opinion, which is accompanied by detailed therapy notes. AR 887-924. As such, the Court cannot say that Mr. Thies' opinion was based more on Plaintiff's self-reports that on his own clinical observations, and Mr. Thies' partial reliance on Plaintiff's subjective allegations cannot serve as a germane reason for discounting his opinion.

D. Remand for Further Proceedings

"'The decision whether to remand a case for additional evidence, or simply to award benefits[,] is within the discretion of the court.'" *Trevizo v. Berryhill*, 871 F.3d 664, 682 (9th Cir. 2017) (quoting *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987)). If an ALJ makes an error and the record is uncertain and ambiguous, the court should remand to the agency for further proceedings. *Leon v. Berryhill*, 880 F.3d 1041, 1045 (9th Cir. 2017). Likewise, if the court concludes that additional proceedings can remedy the ALJ's errors, it should remand the case for further consideration. *Revels*, 874 F.3d at 668.

The Ninth Circuit has developed a three-step analysis for determining when to remand for a direct award of benefits. Such remand is generally proper only where

> "(1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion;

and (3) if the improperly discredited evidence were credited as true, the ALJ
would be required to find the claimant disabled on remand."

*Trevizo*, 871 F.3d at 682-83 (quoting *Garrison v. Colvin*, 759 F.3d 995, 1020 (9th Cir. 2014)).

The Ninth Circuit emphasized in *Leon v. Berryhill* that even when each element is satisfied, the district court still has discretion to remand for further proceedings or for award of benefits. 80 F.3d 1041, 1045 (9th Cir. 2017).

The ALJ cited normal findings on mental status examinations from the day after the first ALJ hearing decision, September 25, 2012, through the date of the second ALJ hearing, April 20, 2017, but did not take into consideration that mental health symptoms can wax and wane, especially for individuals diagnosed with bipolar disorder. *See Garrison v. Colvin,* 759 F.3d 995, 1017-18 (9th Cir. 2014). The record in this case indicates that while treatment was sometimes effective for Plaintiff's mental health impairments, his symptoms fluctuated, and the record indicates a waxing and waning of symptoms consistent with the cyclical and short-lived improvements common in individuals diagnosed with bipolar disorder.

The ALJ's citation of isolated incidents of social interaction does not constitute a clear and convincing reason for discounting Plaintiff's testimony concerning his mental health impairments. The ALJ also erred in evaluating the opinions of Dr. Kang, Mr. Curtis and Mr. Thies.

On remand, the ALJ should re-evaluate the medical record and Plaintiff's symptom testimony, taking into consideration the impact of Plaintiff's waxing and waning symptoms on his residual functional capacity. The ALJ should also re-assess the impact of the opinions of Dr. Kang, Mr. Curtis and Mr. Thies, and the functional limitations contained therein, on the RFC. If necessary to clarify the record, the ALJ may expand the medical record to include more recent assessments of Plaintiff's mental health. Then the ALJ should re-evaluate step five of the

sequential evaluation, because the vocational expert's analysis may change based on the review of the medical opinion evidence concerning Plaintiff's limitations.

## CONCLUSION

Based on the foregoing discussion, the Court finds the ALJ improperly determined Plaintiff to be not disabled. Defendant's decision to deny benefits therefore is REVERSED AND REMANDED for further administrative proceedings. The ALJ is directed to re-evaluate Plaintiff's symptom testimony and the medical record in light of Plaintiff's fluctuating mental health symptoms. The ALJ shall also re-evaluate the opinions of Dr. Kang, Mr. Curtis and Mr. Thies and consider the effect of the limitations contained in these opinions on Plaintiff's past and present functional capacity.

Dated this 28th day of October, 2019.

*Theresa L. Fricke*
Theresa L. Fricke
United States Magistrate Judge